We are hearing four cases here today. Our first case is Florida Commissioner of Agriculture v. Attorney General of the United States 22-13893. Mr. Hall, you have reserved three minutes for rebuttal. You may proceed when you are ready. Thank you. The challenged laws and regulations at issue in this matter are unconstitutional as applied to the appellants. The district court order concluding otherwise and dismissing the amended complaint should be reversed for two main reasons. The first is as this court and others have found, state law compliant medical marijuana patients and even others who commit true crimes they have or can be prosecuted for are still amongst the people with Second Amendment rights. The second is that the historical analogs that the appellees rely on are neither distinctly nor relevantly similar to the challenged laws and regulations at issue. Is there a separate, let's just assume for the moment that I agree with you completely regarding what the people mean. Is there still a separate component of what I'll call step one or the first step of the Bruin analysis that seems to carve out those who are law abiding from those who are not? In other words, it's not a function of who the people are or not, but who the Second Amendment or had the right to bear arms were or were not at the founding. Your Honor, I believe what it applies to is not who has the general right to bear arms as it's an individual right belonging to the people, but who could be stripped of that right. You don't think there's the Supreme Court is filtering at least at step one some folks, whether it's through the people function or through just those who had that right. And then secondly, on who amongst have that right can be stripped from it. It seems to me that there's a filtering function for step one somewhere along the lines. And I don't know if it's the people or if it's taking out those who sort of didn't have that right at the founding in general or categorically. And then to the second part, who then who didn't wasn't categorically excluded, could then strip it individually. Sure. And I know that's the question this court grappled with in Jimenez Shalom. What is that? What does the people mean? It seems to I have to tell you that seems to be in reading and I've tried to read every one of the cases around the circuits. That seems to be what we're struggling with. And what I hope the Supreme Court clarifies in Rahimi, which is not the step two part. I think that is fairly clear. And I think you may be right on a lot of the step two part. But it's really that step one part that I'm struggling with and struggling with to even understand what the Supreme Court is telling you. And I'll just say, and I don't want to occupy too much of your time, but the constant references to law abiding have to mean something. I am not willing to read those out. Whether it's dicta or not, the Supreme Court has said it and said it, I think, 12 times. It has to mean something. What does it mean? Absolutely. And we believe it means that those who are not law abiding, those who commit sufficiently transgressive, violent acts can be stripped of that individual right. That again, as Heller made clear, this is not a collective right. It's not a right the government bestows on the people. But once a person shows themselves to not be willing or able to abide by the social compact, to not be willing to not live amongst, not be violent or transgressive, they can be stripped of that right. And I believe as now Justice Barrett stated, we believe correctly in the canter dissent. The question you raise is will provide more guidance on that point. But I would submit two things for purposes of this case. One, the question of who's amongst the people or not likely leads to the same, likely leads to step two. If the court were to just find if you use medical marijuana, you're not amongst the people and stop there, that would stop the analysis. We don't believe that comports even with this court's holdings in Rozier or Jimenez-Shallone, that even felons are amongst the people. They just can be stripped of those rights. But it really gets into the historical basis of can these people be disarmed. That's what I believe. And that's what I. So who is excluded at step one? What function does step one have? As I read this court's statements in, for example, Jimenez-Shallone. Well, let's start with Bruin. Sure. So starting with Bruin and Heller, my understanding of the people is meant to include all Americans. That was stated in Heller. I believe that's been further clarified by others that that's meant to mean the political community. Non-citizens would be excluded from that. I believe, as stated in Jimenez-Shallone, if that remains good law, and just for the moment, if that has not been abrogated, then at least people, for example, someone who's in the country illegally and does not have sufficient contacts could be excluded. Maybe all persons, not in the country illegally, but not in the country legally. But the appellants in this case are citizens of this country who only use medical marijuana because, not just because of state law, because of Congress's actions and Congress's statements. And that takes us really to that second step of what is the historical analog for what we're looking at here? A situation where, as Justice Thomas stated, Congress is simultaneously forbidding and tolerating the same conduct at the same time. I still haven't gotten a satisfactory answer on what law-abiding means with regard to step one, because they keep using the term. Why is that relevant at step one? Unless we should just ignore it, it doesn't mean anything. I don't believe you should ignore it, Your Honor, and it is difficult to know where to draw the line. Clearly, I would submit, no one argues, I believe, that jaywalking or speeding means you can be disarmed. No one contends that murder, or for purposes of our case, we're not arguing that any felon can't be disarmed. We're not arguing that, for example, domestic violence isn't a basis. What if you're a drug trafficker? You've been convicted of drug trafficking. Drug trafficking would be a felony or a felon equivalent offense, and we're not contesting that. So you're not law-abiding, and we don't even get to step two? We believe it doesn't get, law-abiding, we believe, is a catch-all phrase, an umbrella phrase, and what that means historically is you've committed a sufficiently transgressive act, something akin to what we now know is a felony. I believe the Medina v. Whitaker case from the D.C. Circuit, that capital... I would say that everyone starts with Second Amendment rights. All people in the United States are law-abiding, and we can sort of classify some out. If they are, for example, convicted of or commit a sufficiently transgressive act, yes. That's something illegal. Something sufficiently illegal, I submit. That's a sliding scale. I apologize. The reason why... You're on a sliding scale. You're sort of at the bottom? Absolutely. If you look at the hierarchy, what I believe all courts have noted, and what I believe is quite obvious, is that for the government to note that something is a felony, they're saying this is amongst the most transgressive acts you can commit, a misdemeanor less so. At least for a misdemeanor such as domestic violence, you have an inherent violent element or aspect of that offense. When we talk about marijuana use, even if the court were to view it as wholly illegal, it's a nonviolent misdemeanor at the worst, even for a medical marijuana patient. So the government has classified it as being at that bottom scale, but really what Bruin tells us is it's not... Bruin seems to want to get away from the question of how has Congress classified a particular act, really looking at history, because I believe it's been pointed out by other courts if a state wanted to, for example, enact a gun ban akin to the one proposed or dealt with in Heller, could they just say we're making mowing your law illegal? We're saying that having one beer makes you too irresponsible, you can't have a gun. Those are for the law abiding, and that's where I'm struggling with how to filter that out. I want to get back to the people, because the Fourth Amendment, which also references the people, has never been thought to exclude, for example, those without any contacts in the United States, in other words, or it hasn't been thought to exclude felons, including murderers, those convicted of murder. How do we reconcile that understanding of the people with the use in the Second Amendment? It is difficult, and that's one of the, something we've certainly sought to be mindful of in the briefing is however the court interprets the people in the Second Amendment, it must be mindful of the First Amendment, the Fourth Amendment, the reservations of rights elsewhere, because... It's what leads me to believe that it's not the people that's the filtering function, there's something else about those who were not entitled, in other words, those at common law who didn't have the right to begin with. It seems to be those who may have been mentally ill, those who didn't have citizenship or didn't have contacts with the United States, those who were disloyal in some way, and those who were felons or seen as criminals, right? I believe that's certainly all possible. I agree, Rahimi likely will give guidance there, but what I would submit is for any filtering test that any court has applied or reasonably could, we'd submit the appellants are within the people. That these appellants who only participate in state medical marijuana programs because of Congress's actions and comply with their state actions, with the state laws, are not akin to anyone who's been constitutionally disarmed. What the appellees are attempting to do on that second step is essentially say that historical law is saying you cannot shoot a gun at a New Year's Eve party means that a medical marijuana patient can never possess a gun ever, even in their home, for purposes of self-defense. That's not a bridge too far, that's about ten bridges too far. What about the argument that habitual users of drugs, which your clients are, whether they are addicts or not, are fairly classified as dangerous individuals? Your Honor, I believe that would go to the analogous to either alcoholics or the mentally ill, essentially people who cannot comport their behavior. That's really the type of folks who were disarmed at the founding era, those who showed an inability to understand or apply the law. The pleadings in this case refute that as it relates to the appellants. Not only do they understand the law, they follow it. What about the fact that the Florida Board of Medicine's Medical Marijuana Consent Form makes clear the risks of consuming marijuana, which include dizziness, anxiety, confusion, sedation, inability to concentrate, impaired motor skills, paranoia, psychotic symptoms, etc.? Your Honor, I believe consideration of that really would be the type of policy consideration that Bruin has instructed courts not to follow. That it's really not a question of, there's no dispute in this case that marijuana causes intoxication for a period. That when someone uses marijuana... The question is whether, again, if we're looking at analogs, the question that Judge Branch is asking is whether someone who does something that is symptomatic of psychosis is analogous to those who are seen as mentally ill or insane and were allowed to have their rights taken away. That's the question that Judge Branch is asking you, and I'm going to ask the same question. Sure, and two points to that, if I may. The first would be, again, if you look at who were those types of folks at the founding, essentially the mentally ill akin to the people now who could be involuntarily civilly committed. There's nothing in the pleadings of this case that indicates the appellants or anything like that. The fact that they ever use marijuana does not indicate that they can never comport themselves with the law. As pled, they actively do so. But if the court believes that is a pertinent analysis... But the mentally ill have lucid moments. How is that not analogous to someone... If the mentally ill isn't mentally ill every single second of the day generally, a lot of times it comes and goes. It is possible. So what I would say is if it depends on evidence, if that is a point that needs to be proved, then the appellees need to meet their burden that that is a relevant similarity. Doesn't it hang on the fact that marijuana at present, maybe it will change, but it is a Schedule I drug, which means that it has a high potential for abuse? Your Honor, I see my time has expired. Please proceed to answer the question. Yes, thank you. It is a Schedule I drug. We agree marijuana is federally illegal and that under federal law, it is not viewed as having medicinal purposes. So even if it's viewed as wholly illegal, there's still a nonviolent misdemeanor. It's not just that it's wholly illegal. What I'm getting at with both the Florida piece of my question and the federal piece of my question is that you have a drug that is scheduled as Schedule I, high potential for abuse, and Florida acknowledges and warns the users of its program that this has the potential for psychosis. Your Honor, what I'd say is even if that were true, and I would submit there's no—even if that were true for the moment, what is the historical analog for wholly disarming someone because they ever use a substance that could have impairing effects or even have the effects that you're talking about? All these analogs are sort of prophylactic, aren't they? You put somebody in a category, mentally ill or whatever it is, and you include everybody, even those who are very seriously ill and those who are probably ill. Just like with drugs and marijuana, you take somebody who ought not have a gun at any time is on marijuana. So then why not just say marijuana? As Judge Brandt says, it's a scheduled drug, and we don't grade in between. It's sort of just a prophylactic. Sure. Two points, Your Honor. One would be I think the court does need to be careful of painting with too broad of a brush. As you state about mental illness and as Judge Lutt pointed out, certainly someone who is wholly unable to understand the law is different from someone who has, for example, ADHD or Asperger's or something like that. Whether someone on that end of the scale can be constitutionally disarmed I believe is an open question. So because the Second Amendment is an individual right, because it's not given by the government, we have to be very careful of any consideration saying let's paint with a broad brush so as to make sure that anyone who might hypothetically be too irresponsible is constitutionally disarmed. At that point, there's a number of people with no historical analog being deprived of their core constitutional right. Thank you, Your Honors. Thank you. And you have three minutes for rebuttal, Mr. Hazel. Good morning, Your Honors. May it please the court, Stephen Hazel for the government. I'd like to start with the historical analogs questions where we just left off, and in particular I'd like to highlight three features of this statute that are critical in analyzing. Before you get there, can I ask you about Rahimi? The Supreme Court's decision, they're having oral argument in November. The Supreme Court's decision on Rahimi could have an effect not only on the Fifth Circuit's opinion and potentially its opinion in U.S. v. Daniels, which creates a problem for you here today. Should we wait until the Supreme Court rules on Rahimi? Your Honor, this court certainly has discretion to wait. Well, I'm asking for your thoughts on that. Your Honor, I think it would certainly be appropriate for this court to hold the case for Rahimi, as came up in some of the questions earlier. There's a couple areas of substantial overlap between this case and that one, including this law-abiding and responsible citizen language, as well as questions about how exactly Bruin's historical analogs test works. Of course, we think we've provided the court with more than enough to affirm based on what's in our briefs, but would certainly understand. Could you pull that mic up a little bit? Of course, Your Honor. Is this better? Thanks. Thank you. Of course, it would be appropriate to hold for Rahimi. I'll note, as the panel may be aware, the Eleventh Circuit has granted en banc rehearing in Bondi, another case with parallels, and I believe the en banc court has held that one for Rahimi as well, and so that may be an additional reason to hold here. But I do— Can I get your view on step one? I know you want to start with step two, but to me, that is what needs the most clarification. Bruin tells us to some extent—you're right, we don't have a ton of applications of it—but tells us to some extent how we apply the second step, but I'm at a loss for what to make of the Supreme Court's language on step one. And explain to me how it's filtered, and do you agree with your opposing counsel that however it's filtered, the plaintiffs here would not be filtered out of step one? No, I don't agree with that, Your Honor. Tell me why. Sure. So, as I understand this Court's decision in Jimenez, the filtering is not about the word, the people, but it's about the word, the right. So, for example, that's why the category of felons gets filtered out. The underlying nature of the historical right just excludes law-abiding and excludes people who are not law-abiding and responsible citizens, and that includes the plaintiffs in this case, as I was getting to just a moment ago. But we do, then, with the concern that a lot of circuits seem to have, and it's a fair one, and your opposing counsel sort of touches on it, which is that leaves a lot of discretion, not just to Congress, frankly, but to every state legislature in the country to sort of felonize or make non-law-abiding really any conduct that they want. I mean, we're fine with that as a matter of the police power in general, but once that intrudes on our constitutional rights, that seems to be a tremendous amount of power that we are ceding to state legislatures, is it not? So, Your Honor, I think whatever difficult questions there might be on the margins of what it means to be law-abiding and responsible, this case just isn't there. Under the statute, these have to be unlawful users of illegal drugs. This Court has said that means you have to be a regular, ongoing, and contemporaneous drug user. So we're talking about someone who is regularly violating federal law. My friend a couple times said, you know, whether sort of floated this idea that maybe this isn't a true crime or something like that. I think in the briefing it was undisputed that the conduct that plaintiffs wish to engage in is a violation of federal law, and obviously it has been for 50 years. I think it's also significant that we're talking about a violation, not just of the law, but a violation that involves the use of intoxicating substances. It's undisputed here that those substances involve the impairment of cognition, judgment, other skills that are essential to the safe handling of firearms. It is odd, though, that we would categorize as not as law-abiding, even though I think I would ask someone on the street, they would probably agree with this principle, but that we would say someone's not law-abiding without a conviction or any sort of judicial determination. Now I get that they admit that they're doing this, but they seem to be doing it under the veneer of that, hey, wink, wink, it's okay, federally, we're not going to prosecute you because we're not funding it, and B, the state has completely blessed this. So how can we say they're not law-abiding under that legal infrastructure that exists as it does right now? Your Honor, it's very important for the court not to overread the nature of this appropriations rider. It's a funding restriction. It's geographically and temporally limited. Congress did not exempt marijuana from 922G3. It did not make it illegal. I think under plaintiff's theory, 922G3 was legal for decades, became unconstitutional in some states after the rider, and would become constitutional again if those states changed their minds. That's just an extraordinarily unstable and uncertain view of the Second Amendment. Well, but in terms of when we see someone as law-abiding, it just seems to be hard to say someone's not law-abiding where they are abiding by the law of their state with the imprimatur of the federal government that we are not going to prosecute you for right now until we decide to change our mind about that. And not just one time, but have been reaffirmed constantly by the federal government. So, Your Honor, it just can't be the case that states can undermine the constitutionality of a longstanding federal law in the way that plaintiffs suggest. Which DOJ would take that position consistently in a lot of other contexts, but okay. That just can't, I mean, under the Supremacy Clause, that just can't be how this works. I also want to respond to my friend's use of the phrase, state law-compliant marijuana users. I don't think that's accurate. There are numerous states that have laws that are similar to 922G3. And as we've pointed out, what plaintiffs say that they want to do here is to carry firearms outside of their homes. Florida law incorporates federal law, including 922G3. And what that means is that possessing a firearm outside your home, if you are a regular user of these controlled substances, is a crime under federal law as well. So I don't think it's accurate to say these plaintiffs are state law-compliant. Okay, so let's get to the second step. I know you both want to talk about that. So the first analog seems to be those that were sort of categorically limited because of a perceived irrationality, right? So children, the mentally ill. I know that the term used at the founding was idiots. But people who are categorically seen as not having the right because they hadn't achieved the state of reason. Is that a fair description of what the founding understood those categorical limitations to be? I think that generally, yes. Okay, so I'm having trouble applying that analog to here. Because the way we apply the analog, as I understand Bruin, even in the context of a new context, in other words, a more modern problem like drug use, that we have to apply it not just the burden or compare the burden, but we compare the categorical limitation itself and whether it's sort of overlapping. And here, it would seem to me that drug users are not people that we can say had not achieved a state of reason, like those who are children or mentally ill, who, in other words, couldn't ever get there. Whereas drug users are often there except on the moments when they're using drugs, right? Right, Your Honor. So how can we say that that is a sufficient analog under Bruin, that category? Your Honor, I think in looking at the founding era analogs, it's critically important for the court to be aware that, of course, there were not widespread illegal drugs at the founding. That's not something that happens until the turn of the 20th century. Without a doubt. And so we can't expect the founders to have done things that look like twins for 922-G3, given that very different context. I know we don't need twins. I understand that. There's some give there. But if the theory behind it, in other words, we compare purpose is what I understand it when we're comparing categories and kind, not in burden but in kind. And the purpose was because children did not have the state of reason in order to have the right. And those who were mentally ill had not achieved the state of reason in order to have the right. How is that purpose consistent with drug use, which seems to be not having to do with someone not achieving the state of reason but because of the horrible and detrimental effects that drugs have in our communities? Your Honor, I think it's important to include the analogs you've already identified as well as some of the other analogs, including, so for example, plaintiffs have conceded that the historical tradition includes disarming those who are currently intoxicated. At the time, it was— So I'll get there in a second. But I really won't focus now because as I understand it, you sort of have two groups. You have the group dealing with children mentally ill and those who, through some sort of what we probably call intellectual disability, were one category. And that's a category of kind that we look to whether the purpose overlapped or was consistent. And then you have the drunkenness ones, which very much overlap here. But there we look, in my mind, to then the burden. Is the burden different there? And I have questions about the burden for those. So if we can just keep them in those boxes, that would be helpful for me. Of course, Your Honor. So to start with the first of those boxes, I mean, I think the analog here is that in terms of the why, there's this concern about the combination of firearms and then people who, for various reasons, and obviously you've listed a lot of different categories, would be irresponsible with firearms. That's obviously what's underlying 922G3 as well. There's this concern that if you are a regular user of illegal drugs, then very often you are going to be in a condition where you are not in a position to use firearms safely. And moving on to that second category, I think it's really confirmed there by these historical laws disarming those who are currently intoxicated. So there I agree with you in terms of overlap and purpose. But then we also have to compare not just purpose but burden. And there it seems to me that your opposing counsel has a point that the burdens in those in the intoxication analogs had to do with being intoxicated at that moment and didn't extend outside the moment of intoxication. Is that fair or unfair? So, Your Honor, I think that that's true of many of the historical laws. Tell me which ones that doesn't include. It seems to be all the ones that I saw, but tell me if I have that wrong. Your Honor, I believe I left that caveat because I believe there are some later historical laws that are focused on addicts and things like that, and that those laws would obviously apply. I'm focused on ones in the founding at this point. Understood, Your Honor. So with respect to those laws focusing on currently intoxicated, I think it's critically important that 922G3 is not a permanent ban. It's temporary. It's only so long as this is regular, ongoing, and contemporaneous use. That's not exactly the same thing as focused on a current user. It's not a twin. But it is very close, right? If you were in Congress saying, you know, how can we go just a little bit further than these historical laws, you would focus. But the regulatory framework seems to extend that pretty far. The regulatory framework seems to suggest that you could look almost a year out in determining the regular user. Am I wrong on that? I don't think that's quite right, Your Honor. So the regulatory framework is consistent with what this court has said in Edmonds, which is that regular and ongoing language. What the regulation says, I believe the language is something like active or current user, and that's tied to the statutory language. And you're right. I don't disagree with that. But the evidence to get there, can't you look to past use within a year's time to then conclude that something is regular and ongoing? Am I wrong on that? Your Honor, the regulation recognizes that a failed drug test in the past year can support an inference of regular and ongoing use. Of course, you know, that's not what we have here. Plaintiffs haven't said what they plan to do. Does that mean Elaine Bennis, because she ate too much poppy seed bagels, is then presumed to be a drug user, a heroin user for a year? Of course not, Your Honor. It's an inference from a failed drug test. A jury would have to look at all of the facts in determining whether someone is a regular and ongoing user. I know, but that doesn't help someone when they're in the box. I mean, the whole point of this is you don't have to be in the box to be able to make that call. And in the meantime, in other words, at that point, you've been arrested, you've been prosecuted, you're now in a jury box, and it's now a fact finding. And that's a lot of not being able to possess a firearm up until then, right? So, Your Honor, again, I mean, plaintiffs aren't alleging that their use would be every year. I mean, that's just not at all what we're talking about here. We're talking about use that they acknowledge would be regular and ongoing. It's to treat persistent medical conditions. And so, you know, I think to the extent that they have a challenge to this regulation, this as-applied suit would just not be the forum for resolving that challenge. I do want to say a couple more things about the historical analogues question. First, I think in looking at this history, it's critically important to recognize that legislatures have greater authority to disarm based on conduct that is illegal. Alcohol, as is the substance at issue in many of these analogues, was legal for most of American history, including at the relevant times. Marijuana, of course, is not legal. And so we know because Bruin tells us again and again that legislatures will have greater authority to disarm based on drug use because that conduct is not, in fact, legal. And, in fact, marijuana is a Schedule I substance. So we've talked about the comparison to intoxication, alcohol intoxication. But can we shift to the mentally ill concern about somebody who is mentally ill, who is dangerous? Your opposing counsel has warned us if we go down that path, we run the risk of painting with too broad a brush. You have people who might have ADHD. They might be taking medication for that. How do we avoid that pitfall where we're not just capturing everybody who might have been diagnosed with a mental illness? Your Honor, 922G3 focuses on people who both have this impairment. In G3, it's as a result of illegal drugs, of course, and people whose activities are illegal. And so I think in many of the examples you just gave, in fact, in all of them, there's no reason to think that what's going on there is illegal. And, of course, for the reasons that I just gave, the Second Amendment analysis may well be different in a case where legislatures increased authority to disarm based on conduct that is not law-abiding isn't implicated. So I think those would— But I'm talking about if we use as the historical analog mental illness as a concern, are we not running the risk that in future cases that presents a far broader problem? Your Honor, I think in this case, the district court's approach, Judge Windsor's approach may be a good model. I think he focused on not just one analog but said, look, all three of these are present here. We're talking about alcohol. We're talking about criminal conduct. And we're talking about these forms of impairment and based his decision on that. I think the court could do the same thing here and leave for another case what exactly the scope of authority is with respect to mental illness. And why are we not following the Fifth Circuit's opinion in Daniels? Your Honor, I think Daniels is inconsistent with both this court's precedent and with Supreme Court precedent. As some of Judge Luck's earlier questions got at, Daniels just does not put any weight on the Supreme Court's references to law-abiding and responsible citizens. It says those are the Supreme Court's epithets and then moves on. That's not the approach this court has taken in cases like Rosier. And Rosier, the court said, either it's not dicta at all or it deserves substantial weight. So I think the Fifth Circuit has just taken a path that this court has not. It's also important to note that Daniels relies very heavily on the Fifth Circuit's earlier decision in Rahimi. Of course, the Supreme Court has granted certiorari there. And so there are some reasons to be uncertain about the foundations of Daniels. I see that my time has expired. Thank you. And, Mr. Hall, you have three minutes. Thank you, Your Honor. Two quick points, if I may. First, as to the mental illness question, and second, going back to the people question. Looking at the Appley's answer brief, the Appley's actually extensively lay out some of the views of, as it was called, drunkards at the founding. And I would submit that those views were akin to mental illness. The folks such as John Adams, John Locke, the people cited essentially said that alcohol rendered someone, much like was talked about in the marijuana regulation, essentially unable to function, even beyond that it had some long-lasting effect on them. It was viewed as akin to mental illness. But the how it was dealt with, to Judge Geluck's point, was essentially through a time, place, and manner restriction, not through wholesale disarmament. But don't we have that here? It's only dealing with current users. Your Honor, it's during the time of current use, which I would submit that, again, going beyond even the point here, in Wilson v. Lynch in the Ninth Circuit, the Appley's have taken the position that even someone who obtains a medical marijuana card purely as First Amendment speech, who doesn't even use medical marijuana, is an unlawful user who can be disarmed. But to the extent someone used a month ago, whatever it might be, they move out of it, yes, they could regain their gun rights. But the question is, is the imposition at that time constitutional? Is the fact that that person can't even defend themselves in their home? Is your argument that you slide in and out of constitutional protection? I believe that's the Appley's view. You're in a category, but you can move in and out. That, I believe, is what the law seems to set up, and we submit that's frankly inconsistent with the Second Amendment, that it's really a matter that we don't believe the idea that you go crazy by joining the medical marijuana system. This is a unique case in the sense it's a lawsuit for declaratory judgment. Yes, sir. Most Second Amendment claims, I would think, would arise when they arrest somebody who has a gun, and they're arresting from something, and the gun plays a role in the arrest, and they say the Second Amendment allowed me to have the gun. And so it's an ad hoc sort of thing. You're not thinking about whole categories of people or such things as that. I'm sorry. I need to look at the analog in that particular case. In this situation, it's the broad brush proposition. Your Honor, and I— That's why I raised the prophylactic point in the first place. Sure. I understand. Yes. So when somebody says, I want to have a gun and do medical marijuana, you're talking about a category of a whole bunch of people. You're not talking about an isolated incident in which the person has the gun but is not under the influence. Correct, Your Honor. Yes, under the traditional—as I've seen it on almost every other case that's come up pre- or post-Bruin, it's been someone arrested for 922G3. This is one of the few civil contacts. But without having been arrested, my clients—it is beyond question it would be illegal for them, because they participate in this program, to ever have a gun. Again, what Judge Bradshaw was driving at is still a scheduled narcotic or drug. It is correct, Your Honor. And the way the criminal law treats it, everybody's the same. In a way, yes. I would say no as to medical marijuana, not what Congress has done. In the drug world, initially, Congress, for example, never anticipated some people are going to get arrested and some aren't. Correct. I agree. They're all treated alike. I agree, and I'll be brief as I see my time has expired. But certainly when Gonzales v. Rice was decided, you had, as Justice Thomas said, a watertight prohibition against marijuana. Why don't we do a category in this situation whether or not people who want to violate the law with respect to marijuana are all in the same boat if they want a declaratory judgment about future conduct as opposed to being arrested in a specific case? Sure. So, quickly, Your Honor, my clients actually cannot be arrested right now because of the Rohrabacher Fire. Oh, I realize that. Right, which is what makes this so ahistorical. We agree with Justice Thomas that you have a half-in, half-out marijuana policy. But to your point, to wrap up, that's why I would submit what we're asking for is a very limited holding, even more limited than Daniels. We agree with the reasoning in Daniels, but Daniels was a wholly illegal user of marijuana. We're only asking for declaratory relief as it applies to state-law compliant medical marijuana patients who we believe are distinct, and even if they're not, there's no analog for their disarmament. Thank you, Your Honors. Thank you. We have your case under advisement. I'll call the next case, but I'm going to give you all a chance to get set up.